**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

MITSUBISHI HEAVY
INDUSTRIES, LTD. and
MITSUBISHI POWER SYSTEMS
AMERICAS, INC.,

               Plaintiffs,

       v.

GENERAL ELECTRIC COMPANY

           Defendant.

Civil Action No. 10-5087

**ORAL ARGUMENT REQUESTED**

**GENERAL ELECTRIC COMPANY'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY IN**
**FAVOR OF ONGOING PROCEEDINGS ADJUDICATING THE PATENTS AT ISSUE**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 5

I.      THE PARTIES, WIND TURBINES, AND THE PATENTS AT ISSUE....................... 5

II.     THE ONGOING PROCEEDINGS ADJUDICATING THE PATENTS AT
        ISSUE .......................................................................................................... 5

        A.      The ITC Action – The '039, '985, and '221 Patents ............................. 5

        B.      The Corpus Christi Action – The '039, '985, and '221 Patents ........................... 6

        C.      The Dallas Action – The '055 and '705 Patents .................................... 6

        D.      The Patent Office Reexamination Action – The '221 Patent ................................ 7

        E.      The Orlando Action – Mitsubishi's Offensive Patent Infringement Lawsuit........ 7

MOTION TO DISMISS ARGUMENT................................................................................. 7

I.      LEGAL STANDARD.................................................................................................. 7

II.     SUMMARY OF MITSUBISHI'S CLAIMS ....................................................................... 8

III.    GE'S SUCCESSFUL TRACK RECORD AND MITSUBISHI'S LITIGATION
        CONDUCT SHOWS THAT GE'S ENFORCEMENT OF THE PATENTS AT
        ISSUE WAS NOT A SHAM .................................................................................... 10

IV.     THE *WALKER PROCESS* FRAUD CLAIM FAILS.................................................... 13

V.      MITSUBISHI'S OTHER CLAIMS FAIL...................................................................... 16

MOTION TO STAY ARGUMENT .................................................................................. 17

I.      JUDICIAL EFFICIENCY FAVORS A STAY ................................................................ 18

II.     AVOIDING INCONSISTENT RULINGS FAVORS A STAY ................................... 19

III.    COSTLY AND BURDENSOME ANTITRUST DISCOVERY FAVORS A
        STAY .......................................................................................................... 20

IV.     MITSUBISHI IS NOT PREJUDICED BY A STAY .................................................... 21

CONCLUSION....................................................................................................... 22

APPENDIX.......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  2008 WL 2967034 (D.N.J. July 31, 2008) ........................................................................18

*Asahi Glass Co., Ltd. v. Pentech Pharms., Inc.*,
  289 F. Supp. 2d 986 (N.D. Ill. 2003) ................................................................................2

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).......................................................................................................8

*ASN America, Inc. v. Genus, Inc.*,
  2002 WL 24444 (N.D. Cal. Jan. 9, 2002) ........................................................................18

*AstraZeneca AB v. Mylan Labs., Inc.*,
  2010 WL 2079722 (S.D.N.Y. May 19, 2010) ..................................................................11

*Atari Games Corp. v. Nintendo of America, Inc.*,
  897 F.2d 1572 (Fed. Cir. 1990)......................................................................................8, 9

*Bathke v. Casey's Gen. Stores, Inc.*,
  64 F.3d 340 (8th Cir. 1995) ............................................................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................4, 8

*Best Pallets Inc. v. Brambles Indus., Inc.*,
  2008 WL 3539627 (W.D. Ark. Aug. 11, 2008) ...............................................................7

*Clearplay, Inc. v. Nissim Corp.*,
  555 F. Supp. 2d 1318 (S.D. Fla. 2008) ..........................................................................17

*Covad Commns. Co. v. Bell Atlantic Corp.*,
  398 F.3d 666 (D.C. Cir. 2005) .........................................................................................3

*Deerbrook Pavilion, LLC v. Shalala*,
  235 F.3d 1100 (8th Cir. 2000) ..........................................................................................5

*Dominant Semiconductors Sdn. Brotherhood v. OSRAM GmbH*,
  524 F.3d 1254 (Fed. Cir. 2008)...................................................................................11, 16

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961).........................................................................................................9

## TABLE OF AUTHORITIES (con't)

**Page**

*Elsag Bailey (Canada), Inc. v. Trojan Techs., Inc.*,
   1996 WL 571156 (E.D. Pa. Oct. 3, 1996) ................................................................18, 20

*Eurand Inc. v. Mylan Pharms. Inc*,
   2009 WL 3172197 (D. Del. Oct. 1, 2009) .......................................................................17

*Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*,
   189 F. Supp. 2d 385 (E.D. Va. 2002) .............................................................................10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)...........................................................................13, 14, 15

*Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*,
   516 F.3d 695 (8th Cir. 2008) .............................................................................................8

*Glass Equip. Dev., Inc. v. Besten, Inc.*,
   174 F.3d 1337 (Fed. Cir. 1999) .......................................................................................16

*Global Candle Gallery Licensing Co. v. Nabozny*,
   2009 WL 3852794 (M.D. Fla. Nov. 18, 2009) ...............................................................17

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir. 1983)........................................................................................19

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
   488 F.3d 982 (Fed. Cir. 2007)......................................................................................8, 10

*Implant Innovations, Inc. v. Nobelpharma AB*,
   1996 WL 568791 (N.D. Ill. Oct. 2, 1996) .......................................................................18

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   544 F.3d 1323 (Fed. Cir. 2008) .......................................................................................19

*In re Indep. Serv. Orgs. Antitrust Litig.*,
   203 F.3d 1322 (Fed. Cir. 2000) .........................................................................................9

*In re Innotron Diagnostics*,
   800 F.2d 1077 (Fed Cir. 1986)...........................................................................................4

*Krasnyi Oktyabr, Inc. v. Trilini Imports*,
   578 F. Supp. 2d 455 (E.D.N.Y. 2008) .......................................................................11, 12

# TABLE OF AUTHORITIES (con't)

**Page**

*Landis v. North American Co.*,
    299 U.S. 248 (1936).........................................................................................17

*Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*,
    755 F.2d 158 (Fed. Cir. 1985)..........................................................................13

*Masimon v. Philips Elecs. North America Corp.*,
    2010 WL 925864 (D. Del. Mar. 11, 2010) ......................................................17

*Medimmune, Inc. v. Genetech, Inc.*,
    427 F.3d 958 (Fed. Cir. 2005) ............................................................................8

*Monsanto Co. v. E.I. du Pont de Nemours & Co.*,
    2009 WL 3012584 (E.D. Mo. Sept. 16, 2009)...........................................17, 21

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998)...............................................................9, 13, 20

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)....................................................................................2, 10, 11

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004).....................................................................9, 11

*Robert Harris Co. v. Metal Mfg. Co., Inc.*,
    1991 WL 217666 (E.D. Ark. June 21, 1991)...................................................19

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ..........................................................................8

*Seiko Epson Corp. v. Glory South Software Mfg., Inc.*,
    2010 WL 256505 (D. Or. Jan. 19, 2010) ............................................11, 17, 18

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)...........................................................................................20

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965).............................................................................................9

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)...........................................................................................20

## TABLE OF AUTHORITIES (con't)

**Page**

*Varian Semiconductor Equip. Assocs., Inv. v. Advanced Ion Beam Tech., Inc.*,
  2009 WL 2425849 (D. Mass. Aug. 4, 2009) ............................................................13, 14

*Virtue v. Creamery Package Mfg. Co.*,
  227 U.S. 8 (1913)...............................................................................................................8

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
  382 U.S. 172 (1965)......................................................................................................2, 13

## FEDERAL STATUTES

Section 2 of the Sherman Act, 15 U.S.C. § 2......................................................................2, 16, 20

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).............................................................16

Section 377 of the Tariff Act, 19 U.S.C. § 1337 ...........................................................................6

35 U.S.C. § 282 ...........................................................................................................................8

## FEDERAL RULES

Federal Rule of Civil Procedure 9(b)..............................................................................4, 8, 13, 15

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 6, 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's inherent authority to control its docket, General Electric Company ("GE") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint filed by Mitsubishi Heavy Industries, Ltd. and Mitsubishi Power Systems Americas, Inc. (collectively, "Mitsubishi") or, alternatively, to stay this case in favor of ongoing proceedings adjudicating the patents at issue.

## PRELIMINARY STATEMENT

Mitsubishi claims that GE violated the antitrust laws by obtaining and enforcing five of its wind turbine patents that Mitsubishi claims are invalid or unenforceable. However, Mitsubishi fails to inform the Court that it already has raised certain of the same arguments it makes here in other litigations against GE, which were either withdrawn by Mitsubishi or rejected. Mitsubishi also alleges that GE failed to disclose certain prior art to the Patent Office. For example, Mitsubishi complains that GE failed to disclose a 26-year old, publicly available report -- referred to in the Complaint as the "1984 DOE Report." But Mitsubishi fails to inform the Court that GE sold the business unit involved with that report nearly 18 years ago,[1] almost a decade before GE filed for any of the patents at issue in this case. Nowhere does the Complaint identify who at GE involved in prosecuting these patents supposedly knew about that report or made the decision not to disclose it. Nor does the Complaint disclose the circumstances under which Mitsubishi came into possession of the report for use in this case (Compl. ¶ 121), nor why it could not have found this report sooner.

Because the types of antitrust claims asserted by Mitsubishi require a predicate finding that the asserted patents are invalid or unenforceable, they are typically brought as antitrust counterclaims in patent infringement suits. The parties are already litigating the validity, scope, and enforceability of the five patents that form the basis of this lawsuit in *four* separate forums:

---

[1] *See* Ex. A. "Ex." refers to true and correct copies of exhibits contemporaneously filed herewith.

1) the U.S. International Trade Commission (the "ITC Action"); 2) the U.S. District Court for the Southern District of Texas (the "Corpus Christi Action"); 3) the U.S. District Court for the Northern District of Texas (the "Dallas Action"); and 4) the U.S. Patent & Trademark Office (the "Patent Office Reexamination Action").  Yet rather than asserting its antitrust claims in any of the patent cases, Mitsubishi chose to file a new lawsuit in this district where it plans to build a wind turbine plant.

The Complaint, however, fails to state any plausible claim for relief.  Innovators like GE are awarded legal monopolies to enforce their patents subject only to two narrow exceptions with stiff requirements imposed by the United States Supreme Court.  Mitsubishi must allege facts plausibly suggesting that:

1)      GE's patent infringement lawsuits were *both* objectively baseless -- that is, objectively frivolous -- *and* filed with an anti-competitive subjective intent, a so-called "sham litigation";[2] or

2)      GE committed fraud in obtaining its patents from the Patent Office and enforced its patents knowing they were fraudulently obtained, a so-called "*Walker Process*" claim."[3]

In addition, Mitsubishi needs to allege all of the traditional underlying requirements of a monopolization or attempted monopolization claim under Section 2 of the Sherman Act, 15 U.S.C. § 2.  Put simply, "[t]o avoid turning every patent case into an antitrust case, some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase."  *Asahi Glass Co., Ltd. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003).

GE's successful track record in litigating three of the patents at issue demolishes any notion that GE's lawsuits were shams because it shows that GE's conduct was perfectly lawful

---

[2] *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993).

[3] *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176-79 (1965).

and certainly not frivolous.  In the ITC Action (referenced in the Complaint), Mitsubishi failed to disclose that the Administrative Law Judge ("ALJ") *ruled in GE's favor* on the validity and infringement of all three patents asserted in that case and *rejected* Mitsubishi's inequitable conduct defense asserted against only one of the patents.  The fact that the Commission ultimately reversed the ALJ's infringement (but not validity) findings is irrelevant to the issue of objective baselessness.  Instead, the sole legal issue is whether GE had a reasonable basis for bringing its lawsuit, which the ALJ's decision in its favor shows it clearly did.[4]

As for the Dallas Action, which involves the two additional GE patents at issue, Mitsubishi only alleges that a single claim (among many) in each patent was fraudulently obtained.  (Compl. ¶¶ 165, 173.)  But GE has not yet identified the specific claims it intends to pursue in the Dallas Action, rendering the sham litigation claim moot at this juncture.  Moreover, Mitsubishi chose not to move to dismiss the Dallas Action after indicating that it would do so.  Thus, Mitsubishi has essentially conceded that GE had a "non-frivolous" or "good faith" basis for that lawsuit.

Mitsubishi's *Walker Process* fraud claims also should be dismissed.  In the ITC Action, Mitsubishi *could have and did raise* many of the same validity and unenforceability challenges it asserts against the patents here.  For example, Mitsubishi raised *and later withdrew* its claim that the failure to identify "the E.ON standard" constituted inequitable conduct.  Yet here, Mitsubishi claims that the failure to disclose that same standard constitutes *Walker Process* fraud, even though such a claim requires even more egregious conduct than the inequitable conduct alleged in the ITC Action.  In its answer to the Dallas Action, filed *after* the Complaint in this case, Mitsubishi chose not to assert inequitable conduct based on the alleged failure to disclose the

---

[4] *See, e.g., Covad Commns. Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 677 (D.C. Cir. 2005) (finding patent suit not objectively baseless in part because litigant "advanced reasonable arguments that each court went to some length to reject").

"1984 DOE Report."  Yet that same assertion is the primary basis for claiming *Walker Process*

fraud here.  (The alleged fraud also forms the basis for Mitsubishi's sham litigation challenge to

the Dallas Action (Compl. ¶¶ 205(b), 227(b)).  Thus, Mitsubishi's failure to allege even

inequitable conduct in the Dallas Action further supports why its sham litigation claim has no

merit and should be dismissed.)  Further, Mitsubishi has not sufficiently pled facts to establish

the other elements of a *Walker Process* claim, *e.g.*, Rule 9(b)'s heightened pleading requirements

that the alleged fraud, including the specific people involved, be alleged with particularity, as

well as deceptive intent.

     Alternatively, if the Court is not inclined to dismiss the Complaint at this time, the case

should be stayed pending resolution of the ongoing patent proceedings.  Numerous courts have

faced this situation with dueling patent claims and antitrust claims and it has long been the

"standard practice" (*In re Innotron Diagnostics*, 800 F.2d 1077, 1084-85 (Fed Cir. 1986)) to stay

consideration of the antitrust claims.  The same result is warranted here for several reasons:

- *Judicial Efficiency*: The parties are litigating the validity and enforceability of the disputed patents in other proceedings.  It would waste judicial resources for this Court to adjudicate those very same issues here at the same time because if GE prevails in any of the patent cases, there will be no need to hear the antitrust claims asserted here.

- *Risk of Inconsistent Decisions*: Because Mitsubishi seeks to have this Court rule on the same validity and enforceability issues that are being adjudicated in those other forums, the risk of inconsistent rulings is clear.

- *Potentially Unnecessary Expensive Antitrust Discovery*: The Supreme Court has recognized the "enormous expense of discovery" in antitrust cases in *Bell Atlantic v. Twombly*, 550 U.S. 544, 558 (2007).  All of this expense would turn out to be unnecessary if GE wins any of the pending patent cases since GE would then have the legal right to exclude Mitsubishi from the marketplace.

- *No Prejudice*: Any claim by Mitsubishi that this lawsuit must forge ahead is meritless because it *could have, should have, and still can* raise any of its claims that form the basis of this Complaint in the ongoing patent proceedings.

     Accordingly, GE respectfully requests the Complaint be dismissed in its entirety or,

alternatively, stayed in favor of the ongoing proceedings adjudicating the patents at issue.

## BACKGROUND[5]

## I.   THE PARTIES, WIND TURBINES, AND THE PATENTS AT ISSUE

Mitsubishi Heavy Industries, Ltd. is a Japanese company engaged in the design,

manufacture, and distribution of variable speed wind turbines and components thereof.  (Compl.

¶ 17.)  Mitsubishi Power Systems Americas, Inc. is engaged in similar business and is a U.S.

subsidiary of Mitsuibishi Heavy Industries, Ltd.  (*Id*. ¶ 16.)  GE is a diversified U.S. company

that sells various products, including variable speed wind turbines.  (*Id*. ¶ 18.)

GE is the assignee and owner of the five patents at issue concerning various fundamental

aspects of variable speed wind turbines (*id*.): 1) U.S. Patent No. 5,083,039 ("the '039 patent")

issued in 1992; 2) U.S. Patent No. 6,921,985 ("the '985 patent") issued in July 2005;

3) U.S. Patent No. 7,321,221 ("the '221 patent") issued in January 2008; 4) U.S. Patent No.

6,879,055 ("the '055 patent") issued in April 2005; and 5) U.S. Patent No. 7,629,705 ("the '705

patent") issued in December 2009.[6]

## II.   THE ONGOING PROCEEDINGS ADJUDICATING THE PATENTS AT ISSUE[7]

### A.   The ITC Action – The '039, '985, and '221 Patents

In February 2008, GE sued Mitsubishi in the International Trade Commission ("ITC") to

enjoin the importation of Mitsubishi's infringing variable speed wind turbines.  (*Id*. ¶ 91.)

Following a long investigation, extensive discovery, briefing, and a seven-day trial, the ALJ

issued a 126-page decision in GE's favor in August 2009.  The ALJ concluded that:

---

[5] For purposes of this motion only, Mitsubishi's allegations are assumed to be true.  This section also contains information from filings in the patent proceedings.  It is well-settled that this Court can consider "matters of public and administrative record referenced in the complaint" at the pleading stage. *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000).

[6] GE acquired the '039 patent in 2002 from a third party, Enron.  (Compl. ¶ 100.)

[7] For the Court's reference, attached as an Appendix is a chart listing the actions identified in this section, the patents at issue in these actions, and their status.

- GE proved that Mitsubishi infringed the '039, '985, and '221 patents.

- Mitsubishi had *not* proven that the '039, '985, and '221 patents were invalid.

- Mitsubishi had *not* proven that the '985 patent was unenforceable due to inequitable conduct.  (Ex. B at 122-24.)

In March 2010, the Commission reversed the ALJ in a 45-page decision concluding that Mitsubishi did not infringe the '039 and '221 patents and that GE failed to establish a "domestic industry" under the Tariff Act for the '985 patent.  (Ex. C at 43.)  But the Commission did not disturb the ALJ's finding that the '039 patent was valid (*id*. at 23) or that GE lacked the requisite intent for inequitable conduct concerning the '985 patent (*id*. at 2).  The Commission also did not address the validity of the '985 and '221 patents.  GE has appealed to the Federal Circuit.

**B.      The Corpus Christi Action – The '039, '985, and '221 Patents**

In late 2009, after the ALJ's ruling, GE sued Mitsubishi in the Corpus Christi Action for monetary damages (which are not available in the ITC) and an injunction for patent infringement of the same patents litigated in the ITC Action.  (Compl. ¶ 92.)  Mitsubishi answered and asserted defenses of invalidity and unenforceability.  (Ex. D, ¶¶ 39, 47-50.)  Mitsubishi did not assert any antitrust counterclaims.  At Mitsubishi's request, the Corpus Christi Action was stayed pending the ITC Action.  (Compl. ¶ 92.  *See also* Ex. E.)

**C.      The Dallas Action – The '055 and '705 Patents**

In February 2010, GE sued Mitsubishi in the Dallas Action seeking injunctive relief and monetary damages for infringement of two additional patents, the '055 and '705 patents. (Compl. ¶ 96.)  The '705 Patent had not yet issued at the time of the filing of the ITC Action. Mitsubishi had requested leave in the Dallas Action to file a Rule 12(b)(6) motion, but later withdrew its request.  (Exs. F-G.)  Ultimately, Mitsubishi answered and asserted a counterclaim for a declaratory judgment that, among other things, the '055 patent is invalid based on an

alleged failure to disclose a reference to the Patent Office, including the 1984 DOE Report.  (Ex. H, ¶ 37.)  However, Mitsubishi failed to allege that either the '055 or the '705 patent was unenforceable due to inequitable conduct by GE.  (*Id.* ¶¶ 24-29 (none of the six affirmative defenses assert inequitable conduct by GE).  *See also* Ex. I, ¶¶ 24-29 (same).)  Mitsubishi also did not assert any antitrust counterclaims in the Dallas Action.

### D.    The Patent Office Reexamination Action – The '221 Patent

In February 2010, the Patent Office granted Mitsubishi's request for reexamination of the '221 patent.  (Compl. ¶¶ 134-35.)  The reexamination will determine whether prior art -- that forms the basis of Mitsubishi's challenge to the '221 patent here -- is material to the '221 patent and whether the '221 patent claims as written remain valid.  (*Id.* ¶ 135.)  Mitsubishi has chosen not to seek reexamination of any of the other patents at issue in this case.

Previously, in 1999, the Patent Office reviewed and reaffirmed the validity of all 138 claims of the '039 patent following reexamination proceedings.  (Ex. B at 11.)

### E.    The Orlando Action – Mitsubishi's Offensive Patent Infringement Lawsuit

The same day that Mitsubishi commenced this litigation, Mitsubishi also chose to sue GE for alleged infringement of one of its wind turbine patents in yet another forum, the U.S. District Court for the Middle District of Florida.  Mitsubishi also issued a press release publicizing its offensive lawsuits against GE here and in Florida.  (Ex. J.)

### <u>MOTION TO DISMISS ARGUMENT</u>

## I.    LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court "test[s] the legal sufficiency of a complaint."  *Best Pallets Inc. v. Brambles Indus., Inc.*, 2008 WL 3539627, at *1 (W.D. Ark. Aug. 11, 2008) (Dawson, J.).  The Supreme Court has recently confirmed that "only a complaint that states a

plausible claim for relief survives a motion to dismiss …. [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Although the factual allegations in the Complaint are accepted as true and all reasonable inferences drawn in Mitsubishi's favor, *see Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.,* 516 F.3d 695, 698 (8th Cir. 2008), Mitsubishi's obligation to provide the "grounds of [its] entitle[ment] to relief *requires more than labels and conclusions*, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added; internal quotations and citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the *speculative* level …." *Id*. (emphasis added).

In addition, a Walker Process fraud claim is subject to Rule 9(b). *See Medimmune, Inc. v. Genetech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007).

## II.    SUMMARY OF MITSUBISHI'S CLAIMS

GE, like all patent owners, has the lawful right to enforce its patents and exclude competitors. The legal monopoly to enforce patents -- which are presumed valid and enforceable once issued by the Patent Office, *see* 35 U.S.C. § 282, and can be only overturned by clear and convincing evidence, *see Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) -- provides broad antitrust immunity that shields GE from precisely this type of challenge. *See Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement."); *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007) ("[P]atentees are permitted to make representations about their rights even [if] they are inaccurate."); *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1576 (Fed. Cir.

1990) (reversing preliminary injunction based on patentee's threats to plaintiff's customers: "[T]he patent owner must be allowed to protect the property right given to him under the patent laws."). Under what is commonly referred to as the "*Noerr-Pennington* doctrine," the First Amendment shields conduct petitioning the government, including the courts, from antitrust liability. *See United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) ("A patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action ....").[8]

As noted above, given that this case is based on the enforcement of patents, the law recognizes only two narrow exceptions upon which Mitsubishi can base this action: 1) that GE engaged in "sham litigation" that was designed to interfere with legitimate business relationships; or 2) that GE committed knowing and willful fraud on the Patent Office and thereafter enforced these patents with knowledge that it was obtained by fraud.[9] *See In re Indep. Serv. Org. Antitrust Litig.*, 203 F.3d 1322, 1326 (Fed. Cir. 2000) (a patent owner has antitrust immunity "unless the infringement defendant proves one of [these] two conditions"); *Q-Pharma*, 360 F.3d at 1304-05 (same). Because Mitsubishi has not, and cannot, allege such facts against GE, dismissal is warranted.

---

[8] Although Mitsubishi conclusorily asserts that GE has "maintained sequential objectively baseless lawsuits," (Compl. ¶¶ 195, 216), Mitsubishi has essentially challenged only *two* lawsuits: 1) the ITC and Corpus Christi Actions, which involve the '039, '985, and '221 patents but seek different relief; and 2) the Dallas Action, which involves the '055 and '705 patents.

[9] Because Mitsubishi's Complaint is "premised on the bringing of a patent infringement suit" by GE, the question of whether GE's alleged conduct is "sufficient to strip a patentee of its immunity from the antitrust laws" is governed by Federal Circuit law. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

III.   **GE'S SUCCESSFUL TRACK RECORD AND MITSUBISHI'S LITIGATION CONDUCT SHOWS THAT GE'S ENFORCEMENT OF THE PATENTS AT ISSUE WAS NOT A SHAM**

In order to succeed on a sham litigation claim, Mitsubishi must prove, as the *sine qua non* of its claim, that GE threatened or commenced a litigation under the patents at issue that was both objectively baseless and motivated by the subjective intent to interfere directly with the business relationships of a competitor.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE")*, 508 U.S. 49, 60-61 (1993).  In *PRE*, the Supreme Court held that objective baselessness is comparable to probable cause to sue, which "requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication."  *Id.* at 62-63.  In other words, Mitsubishi must show that the ITC, Corpus Christi, and Dallas Actions were frivolous.  *See*, *e.g.*, *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 393 (E.D. Va. 2002) ("Sham litigation must be objectively frivolous or meritless….") (citing *PRE*, 508 U.S. at 61).  The objective baselessness prong of *PRE* must first be shown before a court even examines whether the litigant's subjective intent was to interfere with a competitor.  *See Honeywell*, 488 F.3d at 1000 (citing *PRE*, 508 U.S. at 57).  Critically, if GE could reasonably have believed it "had *some* chance of winning" its lawsuits when they were filed, then it will not be stripped of its antitrust immunity.  *PRE*, 508 U.S. at 65 (emphasis added).

The ALJ's lengthy decision in the ITC Action concluding that the '039, '985, and '221 patents were valid and infringed shows, by definition, that the ITC Action (and the related Corpus Christi Action for monetary damages) was not "objectively baseless."  Although GE disagrees with the full Commission's later decision in the ITC Action reversing the ALJ and has appealed that decision to the Federal Circuit, the Supreme Court has instructed courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately

unsuccessful action must have been unreasonable or without foundation." *PRE*, 508 at 60 n. 5 (internal quotations and citation omitted). Here, the ALJ's favorable ruling confirms that GE "had *some* chance of winning," *id*. at 65, and GE still may ultimately win on appeal. Courts recognize that non-frivolous litigation cannot as a matter of law give rise to liability under the antitrust laws. *See, e.g., Q-Pharma*, 360 F.3d at 1305 (infringement claim was not objectively baseless even where the infringement claim was voluntarily dismissed); *AstraZeneca AB v. Mylan Labs., Inc.*, 2010 WL 2079722, at \*4 (S.D.N.Y. May 19, 2010) (same even where the infringement claim was rejected after trial: "Astra's infringement action against Mylan was hard-fought and close…. Mylan's invalidity defenses also failed. This outcome hardly bespeaks baseless litigation."); *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 2010 WL 256505, at \*3-4 (D. Or. Jan. 19, 2010) (same where the patentee prevailed on infringement at the ITC and Federal Circuit on one of the multiple patents at issue). *Cf. Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1261-64 (Fed. Cir. 2008) (patent infringement-related communications were not objectively baseless even where an ALJ issued findings of infringement in an ITC action as to only one of ten disputed patents).

Similarly, Mitsubishi has essentially acknowledged that GE's enforcement of the '055 and '705 patents in the Dallas Action was not frivolous. Mitsubishi's decision not to assert in its answer in the Dallas Action that the '055 and '705 patents are unenforceable due to inequitable conduct undermines Mitsubishi's claim here. (Exs. H-I, ¶¶ 24-29.) Further, by failing to file a motion to dismiss the Dallas Action after indicating it would do so (Exs. F-G), Mitsubishi has confirmed that GE has stated a viable claim for patent infringement. *See Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008) (dismissing sham litigation claim:

"Although plaintiff's suit has proven unsuccessful, plaintiff's claims had enough merit to survive defendant's motion to dismiss.").[10]

Mitsubishi seeks to save its Complaint by focusing on two allegedly "new," publicly available pieces of prior art -- a 1984 DOE Report and a 1981 Lipo Report referenced therein -- which it believes will be favorable to its patent defenses.[11]  But Mitsubishi's beliefs regarding the merits of these Reports to its patent defenses cannot trump the rulings in the ITC Action, as well as Mitsubishi's own litigation positions in the Dallas Action, all of which confirm that GE's positions were *not* frivolous and *not* taken in bad faith.  Moreover, Mitsubishi fails to explain why it could not have found the publicly available 1984 DOE Report and 1981 Lipo Report earlier and raised them in the ITC Action, when they were suddenly able to find them for use in this case.  Mitsubishi's only answer is to cast blame on GE by asserting that GE failed to produce or identify these documents in response to discovery requests served in the ITC Action.  (Compl. ¶¶ 117-20.)  As this Court is well aware, discovery disputes like the one Mitsubishi seeks to premise this case upon are properly brought before the tribunal presiding over the action where the dispute arose.  Moreover, as noted above (*see supra* at 1 & Ex. A), GE sold the unit involved with the 1984 DOE Report 18 years ago, well before the ITC suit was even filed.  Accordingly, Mitsubishi fails to state a plausible sham litigation claim as to the five patents at issue.

---

[10] Mitsubishi's challenge to claim 7 of the '705 patent (Compl. ¶ 173) is particularly specious because GE has not been required yet in the Dallas Action to disclose which of the 17 claim(s) in the '705 patent GE is asserting against Mitsubishi and that specific identification will not come until a later date in the case.  Thus, Mitsubishi currently has no basis for alleging that the assertion of the '705 patent is a sham.

[11] There can be no dispute that all of the other omitted prior art identified by Mitsubishi could have been asserted by Mitsubishi in the ITC Action because they all existed prior to the filing of the ITC Action in late February 2008.  (*See* Compl. ¶¶ 124-26 ('039 patent:  alleged "counterpart" European patent being revoked in October 2007); ¶¶ 137-41 ('221 patent: U.S. Patent No. 7,289,920 application filed in June 2003 and U.S. Patent No. 6,215,202 issued in April 2001); ¶ 155 ('985 patent: U.S. Patent No. 5,907,192 issued in May 1999).)  Nowhere does Mitsubishi allege why it could not have raised all of this information in the ITC Action.

## IV.    THE *WALKER PROCESS* FRAUD CLAIM FAILS

In order for Mitsubishi to establish liability on its claim for *Walker Process* fraud,[12] in addition to pleading all of the elements of a monopolization claim, it must prove each of the following: 1) "knowing and willful" fraud by GE before the Patent Office; 2) a clear showing of reliance by the Patent Office upon the fraudulent misrepresentation (*i.e.*, that the patent would not have been issued but for the fraudulent misrepresentation); and 3) enforcement of the patent by GE.  *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177-79 (1965); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-70 (Fed. Cir. 1998). Mitsubishi must also allege facts showing "independent and clear evidence of deceptive intent" by GE.  *Noblepharma*, 141 F.3d at 1071.  Furthermore, GE "must also have been aware of the fraud *when bringing suit*" for patent infringement.  *Id*. at 1069 (emphasis added).  Finally, cumulative information cannot provide the basis for a viable *Walker Process* claim.  *See Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 166 (Fed. Cir. 1985).

It is well-settled that "*Walker Process* fraud is a more serious offense than inequitable conduct."  *Noblepharma*, 141 F.3d at 1070.  Thus, a prerequisite to stating a *Walker Process* claim is pleading fraud before the Patent Office with Rule 9(b) particularity -- "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent Office]."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).  Rule 9(b) also requires Mitsubishi to state with particularity the circumstances constituting the fraud, including "not only specifying the false statements and by whom they were made but also identifying the basis for inferring

---

[12] Mitsubishi's *Walker Process* claim is limited to four of the five patents at issue, excluding the '039 patent, which was prosecuted by a third-party, Enron, and not acquired by GE until 2002.  (Compl. ¶ 100. *See also id.* ¶ 11 ("GE obtained four additional patents through fraudulent conduct before the [Patent Office]…."), ¶ 205(b) (same), & ¶ 227(b) (same).)

scienter." *Varian Semiconductor Equip. Assocs., Inv. v. Advanced Ion Beam Tech., Inc.*, 2009 WL 2425849, at *8 (D. Mass. Aug. 4, 2009). The Federal Circuit also has made clear that "[t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct," let alone for a *Walker Process* fraud claim. *Exergen*, 575 F.3d at 1331.

Mitsubishi's fraud allegations do little more than identify a piece of prior art or information that allegedly was not disclosed to the Patent Office, and then state in conclusory fashion that the art was material and "intentionally withheld." (*See, e.g.,* Compl. ¶¶ 111, 114, 131, 133, 140, 144, 152-54, 155-56, 165, & 168.) These allegations fail to state the who, what, when, where and how necessary for pleading inequitable conduct, much less the more heightened pleading requirements necessary to adequately plead a *Walker Process* fraud claim.

Specifically, as for the '985 patent, Mitsubishi asserts that GE failed to disclose to the Patent Office the E.ON standard, one of the patent's alleged inventors, and the 1984 DOE Report. (*Id.* ¶¶ 142-56.) Regarding the E.ON standard, Mitsubishi *already raised and withdrew* its claim that GE's alleged failure to identify this prior art in the ITC Action constituted inequitable conduct, let alone *Walker Process* fraud. (Ex. K, 2 n. 2.)[13] Similarly, regarding the alleged missing inventor, the ALJ *already rejected* Mitsubishi's inequitable conduct claim and held that GE had no deceptive intent in omitting Thomas Wilkens as a named inventor and, thus, Mitsubishi cannot plausibly allege the requisite intent for *Walker Process* fraud. (Ex. B at 108-09, 122-23.) Finally, the alleged non-disclosure of the 1984 DOE Report is insufficient.

---

[13] In any event, GE's alleged failure to attribute the E.ON standard in its '985 patent (Compl. ¶ 156) does not constitute "knowing and willful" fraud because Mitsubishi admits that GE disclosed the relevant Figures in its patent. *See Exergen*, 575 F.3d at 1331 (cautioning against "inequitable conduct devolv[ing] into 'a magic incantation to be asserted against every patentee' and its 'allegation established upon a mere showing that art or information having some degree of materiality was not disclosed'") (citation omitted).

- 14 -

Mitsubishi has not satisfied Rule 9(b)'s strict requirements that GE "knowingly and willfully" committed fraud before the Patent Office by the mere fact that GE failed to disclose the 1984 DOE Report -- a document *over* 21 years old at the time the '985 patent issued in 2005.  Further, Mitsubishi does not allege "who, what, when, where, and how … the material … omission [of the 1984 DOE Report was] committed [by GE] before the [Patent Office]."  *Exergen*, 575 F.3d at 1327.  For example, nowhere does Mitsubishi identify who at GE (or how that person) supposedly knew about the 1984 DOE Report, and decided not to disclose it, when the '985 patent application was filed in 2003.  This is precisely the defect that the Federal Circuit cited in *Exergen* in affirming the denial of leave to allege inequitable conduct, let alone *Walker Process* fraud, where, like here, the allegations provided "no factual basis to infer that any *specific individual*, who owed a duty of disclosure in prosecuting the … patent, knew of the" omitted information.  *Id*. at 1330 (emphasis added).  This showing is particularly necessary here since the GE division involved with the 1984 Report was sold in 1992 (Ex. A), more than a decade earlier.

With respect to the '221 patent, Mitsubishi could have raised the alleged non-disclosure of the E.ON standard and U.S. Patent No. 6,215,202 in the ITC Action.  (Compl. ¶¶ 131, 139-40.)  Having chosen not to assert such claims in the ITC Action (*see supra* at 12 n. 11 & 14), Mitsubishi should not be given a second bite at the apple here.[14]  Finally, as to the '055 and '705 patents, Mitsubishi's failure to assert an inequitable conduct defense or counterclaim in its answer in the Dallas Action (*see* Exs. H-I, ¶¶ 24-29) belies any contention that the allegedly omitted prior art (Compl. ¶¶ 163, 168) is sufficient to pass the higher bar of stating a *Walker Process* fraud claim.  And once again for these three patents Mitsubishi fails to meet the heightened requirements of 9(b).

---

[14] Indeed, the relevance of the E.ON standard is currently before the Patent Office due to Mitsubishi's filing of a request for reexamination of the '221 patent.  (Compl. ¶ 135.)

In sum, Mitsubishi has not alleged facts sufficient to state a plausible *Walker Process* fraud claim with respect to any of the five patents at issue.

## V.   MITSUBISHI'S OTHER CLAIMS FAIL

In Counts 2 and 4, Mitsubishi also challenges GE's alleged "publicity campaign" and communications with Mitsubishi and third parties regarding its patents.  (Compl. ¶¶ 84-89, 174-89.)  Similarly, in Counts 5 and 6, Mitsubishi alleges that this same conduct is unlawful under Section 43(a) of the Lanham Act (*id*. ¶¶ 235-37) and constitutes tortious interference under Arkansas law (*id*. ¶¶ 247-48).  Because the essence of these claims is a challenge by Mitsubishi to alleged conduct that is related to GE's enforcement of its patents, Mitsubishi must plead facts showing GE's "bad faith."  *See Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) ("We have stated that federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith.  Federal patent law likewise preempts state-law tort liability when a patentee in good faith communicates allegations of infringements of its patent.") (internal quotations and citations omitted).[15]

The Federal Circuit has extended the *same* "objectively baseless" test that the Supreme Court requires for a sham litigation claim to these type of claims that are unquestionably related to the enforcement of patents.  *See id*. at 1258-62 (objectively baseless test applied to Lanham Act and tortious interference claims based on publicizing a patent in the marketplace and pre-litigation communications) (citations omitted); *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343-44 (Fed. Cir. 1999) (objectively baseless test applied to claim under Section 2 of Sherman Act based on actual and threatened patent infringement lawsuits).  Here, Mitsubishi has

---

[15] Mitsubishi itself recognizes that "bad faith" is a prerequisite to these claims related to GE's enforcement of its patents.  (Compl. ¶ 240 (Section 43(a) of the Lanham Act: "GE's statements have been made in bad faith."); *id*. ¶ 252 (tortious interference under Arkansas law: same).)

failed to allege facts plausibly suggesting that GE knew that the challenged press releases and communications were "objectively baseless."  And, as demonstrated above, GE's success in the ITC Action and Mitsubishi's conduct in the patent cases confirm that under no circumstances were GE's public statements and communications "objectively baseless."  *See Clearplay, Inc. v. Nissim Corp.*, 555 F. Supp. 2d 1318, 1329-31 (S.D. Fla. 2008) (granting motion to dismiss state law tort claims challenging patentee's communications with plaintiff's customers and patentee's press releases where plaintiff did not plead facts showing that the challenged conduct was "objectively baseless").  *Cf. Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 2010 WL 256505, at *5-6 (D. Or. Jan. 19, 2010) (dismissing state law tort claim where patentee's success before the ITC and Federal Circuit confirmed that patentee's infringement litigation strategy had not been objectively baseless).  Accordingly Counts 2 and 4 should be dismissed to the extent they allege conduct other than sham litigation or *Walker Process* fraud and Counts 5 and 6 should be dismissed.

## <u>MOTION TO STAY ARGUMENT</u>

Alternatively, the Court should exercise its discretion to stay this case in favor of the ongoing proceedings adjudicating the patents at issue.  It is well-settled that this Court has the inherent authority to control its docket.  *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).  Numerous courts have stayed antitrust claims alleging improper enforcement of patents, such as here, in favor of proceeding only with the patent claims.[16]  The reasons are straightforward, compelling, and apply equally here.

---

[16] *See, e.g., Masimon v. Philips Electronics North America Corp.*, 2010 WL 925864, at *1-4 (D. Del. Mar. 11, 2010) (staying discovery of, and bifurcating, antitrust counterclaims that could potentially be eliminated or narrowed by resolution of the underlying patent dispute); *Seiko Epson*, 2010 WL 256505, at *5 (same); *Global Candle Gallery Licensing Co. v. Nabozny*, 2009 WL 3852794, at *4 (M.D. Fla. Nov. 18, 2009) (same); *Eurand Inc. v. Mylan Pharms. Inc*, 2009 WL 3172197, at *1-2 (D. Del. Oct. 1, 2009) (same); *Monsanto Co. v. E.I. du Pont de Nemours & Co*., 2009 WL 3012584, at *2-3 (E.D. Mo. Sept. 16,

## I.      JUDICIAL EFFICIENCY FAVORS A STAY

Courts have recognized that the resolution of an underlying patent dispute can completely eliminate or narrow sham litigation and *Walker Process* claims, as well as assist in resolving such claims.  *See, e.g., Seiko Epson*, 2010 WL 256505, at *5 (stayed *Walker Process* claim because if there was "no predicate finding of inequitable conduct" in the patent trial then the *Walker Process* claim "would fail as a matter of law"); *Elsag Bailey (Canada), Inc. v. Trojan Techs., Inc.*, 1996 WL 571156, at *1 (stayed sham litigation antitrust action pending resolution of infringement claims between same parties in Canadian court: "This Court's *Noerr-Pennington* analysis will at least be greatly aided and may be disposed of by resolution of the Canadian Action.").

It is uncontroverted that the parties are litigating the exact same issues raised in the Complaint relating to the validity, scope, and/or enforceability of the patents in the ITC, Corpus Christi and Dallas Actions.  Depending on the results of the Federal Circuit appeal in the ITC Action, Mitsubishi will be further litigating the three patents at issue in that case either in the ITC or in the Corpus Christi Action, where the stay is expected to be lifted at the conclusion of the ITC Action.  In addition, Mitsubishi itself has prompted the Patent Office to reexamine the '221 patent.  Moreover, if GE prevails in the Dallas Action (or at least raises credible arguments), there will be no basis for Mitsubishi's sham litigation claim related to the two patents at issue there.

---

2009) (same); *Abraxis Bioscience, Inc. v. Navinta LLC*, 2008 WL 2967034, at *8 (D.N.J. July 31, 2008); *ASN America, Inc. v. Genus, Inc.*, 2002 WL 24444, at *6-7 (N.D. Cal. Jan. 9, 2002) (same); *Elsag Bailey (Canada), Inc. v. Trojan Techs., Inc.*, 1996 WL 571156, at *1 (E.D. Pa. Oct. 3, 1996) (same where antitrust claims were brought as a separate lawsuit); *Implant Innovations, Inc. v. Nobelpharma AB*, 1996 WL 568791, at *2-3 (N.D. Ill. Oct. 2, 1996) (same where antitrust claims were part of a complaint seeking a declaratory judgment for patent invalidity and unenforceability).

In sum, the antitrust claims asserted in the Complaint could be eliminated or significantly narrowed if GE prevails in any of the patent disputes in the ITC, Corpus Christi and Dallas Actions.  Further, in the event GE is successful on its infringement claims on any of its asserted patents in any of the actions it will be entitled to seek an injunction preventing Mitsubishi from selling its products in the United States.  In such an instance, Mitsubishi would have suffered no damages because GE would have a legal basis for excluding Mitsubishi from the marketplace. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323, 1337 (Fed. Cir. 2008) (stating that a patent holder is "legally entitled" to "a monopoly over the manufacture and distribution of the patented invention").  Thus, there can be no serious dispute that the patent actions will have a significant, if not dispositive, impact here.

## II.    AVOIDING INCONSISTENT RULINGS FAVORS A STAY

Mitsubishi would have this Court rule on essentially the same or similar patent issues being litigated elsewhere.  For example, Mitsubishi has instituted a reexamination of the '221 patent based on the very same E.ON standard alleged in this case to constitute fraud on the Patent Office.  (Compl. ¶¶ 134-35.)  Courts routinely stay patent cases where a reexamination is pending in the Patent Office to avoid inconsistent rulings regarding the validity of the patent. *See, e.g.*, *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *Robert Harris Co. v. Metal Mfg Co., Inc.*, 1991 WL 217666, at *3-4 (E.D. Ark. June 21, 1991).  Similarly, Mitsubishi has asserted here that the '055 patent was obtained by fraud because GE allegedly withheld the 1984 DOE Report.  (Compl. ¶ 165).  In the Dallas Action, Mitsubishi has asserted a counterclaim for a declaratory judgment that the '055 patent is invalid due to the 1984 DOE Report.  (Ex. H, ¶ 37.)  Further, depending on the outcome of the Federal Circuit appeal in the ITC Action, Mitsubishi is expected to assert its "new" prior art on remand in the ITC Action or in the Corpus Christi Action.  Surely, the possibility of inconsistent rulings is present here, where

Mitsubishi is (or will be) making the same arguments in multiple proceedings.  Under these circumstances, courts have concluded that the possibility of inconsistent results warranted a stay in favor of the patent proceedings.  *See, e.g.*, *Elsag Bailey*, 1996 WL 571156, at *1 (stating that denial of the alternative relief sought "could surely result in … potentially inconsistent results").

## III.   COSTLY AND BURDENSOME ANTITRUST DISCOVERY FAVORS A STAY

Here, antitrust-specific issues, such as "relevant market" (*e.g.*, whether variable speed wind turbines compete with fixed speed wind turbines and other systems used to generate electric power from non-wind sources of energy) and "market power" (*e.g.*, whether GE's ability to raise prices is constrained by competitors), will require lengthy and expensive fact and expert discovery that will consume the parties' resources, and tax the Court's resources in resolving inevitable disputes.  *See Bathke v. Casey's Gen. Stores, Inc.,* 64 F.3d 340, 345 (8th Cir. 1995) ("Antitrust claims often rise or fall on the definition of the relevant market.").[17]  In addition, antitrust discovery would encompass complex discovery regarding the proper measure of damages.  A stay is particularly appropriate here where GE can lawfully enjoin Mitsubishi if it prevails on any one of the patents at issue in the various patent litigations and where these relevant market issues do not come into play unless and until Mitsubishi can prove that the patents are invalid and unenforceable.  *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998).  Thus, as above, discovery on the antitrust claims asserted in the Complaint could be eliminated or significantly narrowed if GE prevails in any of the patent disputes in the ITC, Corpus Christi and Dallas Actions.

---

[17]  *See United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966) (a monopolization claim requires the possession of monopoly power); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (an attempted monopolization claim requires a dangerous probability of achieving monopoly power).

## IV.    MITSUBISHI IS NOT PREJUDICED BY A STAY

It is uncontroverted that Mitsubishi could have asserted (and did in fact assert) some of the same claims they have now chosen to bring in this fifth proceeding between the parties.  The only difference is that Mitsubishi's counsel has now put a different label on GE's alleged conduct.  In the patent proceedings, Mitsubishi claims that GE's alleged conduct renders the patents invalid, non-infringed, or unenforceable.  In this case, Mitsubishi claims that GE's alleged conduct constitutes sham patent infringement litigation or *Walker Process* fraud.  Having made the strategic decision to forego asserting its antitrust claims in the other proceedings, Mitsubishi cannot be prejudiced by a stay of these proceedings.  *See Monsanto*, 2009 WL 3012584, at *2 (granting a stay did not prejudice the parties where "[they] could have brought many of these [antitrust] claims years ago, yet instead they waited until this litigation").

The only "new" alleged prior art that Mitsubishi claims it could not have raised in the ITC Action is the 1984 DOE Report (and the 1981 Lipo Report cited therein) because Mitsubishi claims it did not uncover the 1984 DOE Report until recently.  However, if GE wins on appeal and the ITC Action is remanded for further proceedings, Mitsubishi can seek to raise the Report as a basis for challenging the '039 and '985 patents.  Alternatively, it can assert it in the Corpus Christi Action where it raised invalidity and unenforceability defenses.  (Ex. D, ¶¶ 39, 47-50.)  Further, Mitsubishi has already asserted the 1984 DOE Report in the Dallas Action as a basis for invalidity (but not unenforceability) of the '055 patent.  (Ex. H, ¶ 37.)  In addition, Mitsubishi has initiated a Patent Office reexamination of the '221 patent based on the same information that it challenges here.  (*See supra* at 7.)  So, under no circumstances can Mitsubishi claim that a stay here prevents it from contesting the underlying patents based on information that it could have, has, and still can raise elsewhere.

## CONCLUSION

The Complaint fails to state plausible antitrust claims particularly given GE's successful track record litigating the patents at issue against Mitsubishi and Mitsubishi's own conduct in defending against those actions.  Having failed to allege facts showing that GE's assertion of its patents was frivolous, in bad faith, or fraudulent, the Complaint must be dismissed under controlling precedent.  Alternatively, if the Court were to conclude that dismissal is not appropriate at this time, then this case should be stayed in its entirety in favor of the ongoing patent proceedings between the parties.

DATED:   June 25, 2010                               Respectfully submitted,

/s/ Clifford W. Plunkett
Clifford W. Plunkett
FRIDAY, ELDREDGE & CLARK, LLP
3425 North Futrall Drive, Suite 103
Fayetteville, AR 72703
Telephone: 479-695-1103
Facsimile: 479-695-2147
plunkett@fridayfirm.com

David J. Lender (*pro hac vice* pending)
Eric S. Hochstadt (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.lender@weil.com
eric.hochstadt@weil.com

John E. Scribner (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0939
john.scribner@weil.com

*Attorneys for Defendant*
*General Electric Company*

- 22 -

# Appendix

## Proceedings Adjudicating the Patents At Issue

| Action | Patents | Status |
|---|---|---|
| ITC | '039, '985, and '221 | Ongoing<br>(GE appealed to Federal Circuit) |
| Corpus Christi | '039, '985, and '221 | Stayed<br>(Mitsubishi requested pending ITC Action) |
| Dallas | '055 and '705 | Ongoing |
| Patent Office Reexamination | '221 | Ongoing |
| Arkansas | '039, '985, '221, '055, and '705 | Commenced |

## <u>CERTIFICATE OF SERVICE</u>

I, Clifford W. Plunkett, hereby certify that on June 25, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Filiberto Agusti
fagusti@steptoe.com

Kenneth Patrick Ewing
kewing@steptoe.com

Steven J. Barber
sbarber@steptoe.com

Charles Eric Vester
cev@mcrmt.com

David R. Matthews
drm@mcrmt.com

*/s/ Clifford W. Plunkett*
Clifford W. Plunkett