**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

MITSUBISHI HEAVY INDUSTRIES, LTD., and          PLAINTIFFS
MITSUBISHI POWER SYSTEMS AMERICAS, INC.

v.         Case No. 5:10CV05087 JH

GENERAL ELECTRIC COMPANY             DEFENDANT

**OPINION AND ORDER**

    Mitsubishi Heavy Industries, Ltd., and Mitsubishi Power Systems Americas, Inc. (collectively "Mitsubishi"), allege that General Electric Company has violated the antitrust laws by monopolizing and attempting to monopolize the market in the United States for variable speed wind turbines in violation of Section 2 of the Sherman Act. According to the complaint, GE has monopolized and attempted to monopolize the market by obtaining patents by fraud and enforcing those patents through sham litigation, which has had the effect of excluding Mitsubishi and other potential competitors from the market. In addition to the antitrust claims, Mitsubishi alleges that GE has engaged in unfair competition in violation of Section 43(a) of the Lanham Act and has committed the tort of interference with contractual and prospective business relations. GE has filed a motion to dismiss for failure to state a claim or, in the alternative, to stay this action pending resolution of the infringement actions that Mitsubishi alleges are sham litigation. The motion to dismiss will be denied. The alternative motion for a stay will be granted.

**I.**

    Mitsubishi Heavy Industries, Ltd., is a Japanese company engaged in the design, manufacture, and distribution of variable speed wind turbines. Mitsubishi Power Systems Americas, Inc., is a United States subsidiary that is engaged in similar business. In May 2010, Mitsubishi

entered into an agreement with the State of Arkansas to construct and operate a wind turbine manufacturing plant in Fort Smith, Arkansas. GE is a United States company that sells various products, including variable speed wind turbines, and it is the owner of the five patents at issue concerning aspects of variable speed wind turbines. The five patents at issue are: (1) U.S. Patent No. 5,083,039 ('039 patent); (2) U.S. Patent No. 6,921,985 ('985 patent); (3) U.S. Patent No. 7,321,221 ('221 patent); (4) U.S. Patent No. 6,879,055 ('055 patent); and (5) U.S. Patent No. 7,629,705 ('705 patent").

In February 2008, GE filed a complaint before the International Trade Commission alleging that Mitsubishi was importing variable speed wind turbines that infringe GE's patents '039, '985, and '221. After an evidentiary hearing, investigation, and briefing from the parties, the administrative law judge issued a 126-page final initial determination in August 2009. The ALJ held that: Mitsubishi had infringed the patents; Mitsubishi did not prove that the patents were invalid; and Mitsubishi did not prove that GE obtained the '985 patent through inequitable conduct by failing to name Thomas Wilkins as one of the inventors when applying for that patent. In October 2009, the ITC issued notice of its determination to review the ALJ's initial determination, except with respect to the ALJ's finding that GE lacked culpable intent in failing to name Wilkins as one of the inventors of the '985 patent (which finding was the foundation for the ALJ's determination of no inequitable conduct). In March 2010, the ITC reversed parts of the ALJ's initial determination in a 45-page opinion. The ITC held that Mitsubishi did not infringe the '039 and '221 patents, and that GE failed to establish a domestic industry with respect to the '985 patent. The ITC did not rule on whether GE obtained the '985 patent through inequitable conduct because the ITC chose not to review that finding. GE has appealed the ITC opinion to the Federal Circuit.

In September 2009, GE commenced an action in the Southern District of Texas (Corpus Christi), alleging violations of patents '039, '985, and '221 (the same patents at issue before the ITC).[1] Mitsubishi filed an answer and asserted that the patents were invalid and unenforceable but did not file an antitrust counterclaim. Mitsubishi requested and was granted a stay of that action pending resolution of the ITC appeal.[2]

In February 2010, GE commenced an action in the Northern District of Texas (Dallas),[3] alleging violations of patents '055 and '705. The '705 patent was issued on December 8, 2009, which was after GE's complaint before the ITC. Mitsubishi answered and filed a counterclaim alleging, in part, that the claims of the asserted patents are invalid for failing to meet one or more conditions of patentability, specifically mentioning certain prior art. Trial in the Dallas action is scheduled to commence on November 28, 2011.

Mitsubishi alleges that GE instituted the ITC/Corpus Christi and Dallas actions knowing that all five of the patents that it seeks to enforce were procured or enforced through fraud. Part of the fraud allegations relate to a project in 1980 when the United States government hired GE to design and build a particular wind turbine generator. To document the design, development, and analysis

---

[1] GE says that it filed the action in the Southern District of Texas (Corpus Christi) because the ITC cannot award damages. This opinion will refer to the action in the Southern District of Texas as "the Corpus Christi action" and to those actions collectively as "the ITC/Corpus Christi action."

[2] GE filed its principal brief in the Federal Circuit on June 11, 2010. Mitsubishi obtained an extension of time so that its brief is due on August 23, 2010. Oral argument has not been scheduled.

[3] This opinion will refer to the action in the Northern District of Texas as "the Dallas action." The Court will refer to the ITC/Corpus Christi action and the Dallas action together as "the infringement actions."

of the system, GE published in 1984 its final report, known as the "1984 DOE Report." The 1984 DOE Report also cites to and incorporates a study by T.A. Lipo (the "1981 Lipo Report"). Mitsubishi alleges that the 1984 DOE Report and the Lipo Report contained therein constitute material prior art that was not disclosed to the PTO in the application for the '039 patent.[4] Mitsubishi alleges that GE knew when it brought the ITC/Corpus Christi action that it had no reasonable basis for seeking enforcement of claim 121 of the '039 patent. Mitsubishi asserts that the existence and contents of the 1984 DOE Report were relevant to the merits of its arguments in the ITC action and should have been disclosed during the course of discovery in that action. Mitsubishi also asserts that the officers and employees at GE knew of the 1984 DOE Report and knew that the Report rendered claim 121 of the '039 patent unenforceable, so that GE's litigation was a sham. Mitsubishi says it only learned of the 1984 DOE Report upon its own investigations after commencement of the Dallas action.

Mitsubishi alleges that GE obtained the '221 patent fraudulently because the patent application intentionally withheld material prior art—"the E.ON standard"—which GE had previously disclosed in its patent application in Germany, where "the E.ON standard" was developed and is well known.

Mitsubishi alleges that GE obtained the '985 patent fraudulently by knowingly failing to include the name of one of the inventors, Thomas Wilkins, who had not assigned his rights to GE; by failing to disclose its own prior art (the 1984 DOE Report and GE's '192 patent); and by failing

---

[4] GE obtained the '039 patent from the Enron bankruptcy estate.

to disclose that it had copied the E.ON standard. Mitsubishi alleges that GE obtained the '055 patent fraudulently by failing to disclose the 1984 DOE Report,[5] which was material prior art.

Finally, Mitsubishi alleges that GE obtained the '705 patent fraudulently by withholding the E.ON standard and other prior art and by deceptively submitting an amendment that obtained a patent for a voltage control system that the Examiner had previously found to be obvious.

According to Mitsubishi's complaint, GE has threatened to enforce these patents and has brought the infringement actions knowing that the patents were fraudulently obtained and therefore unenforceable. GE has done so, Mitsubishi alleges, as a part of its plan to monopolize the market in the United States for variable speed wind turbines.[6]

Mitsubishi has requested that the PTO reexamine the validity of the '221 patent, and the PTO granted that request in February 2010. Mitsubishi has commenced an action against GE in the Middle District of Florida (Orlando), alleging patent infringement.

## II.

GE argues that Mitsubishi's complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Mitsubishi's claims in large part depend on two Supreme Court decisions: *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965); and

---

[5] In the Dallas action, Mitsubishi alleges that the '055 patent is unenforceable due in part to the existence of the 1984 DOE Report as material prior art but does not allege that the failure to disclose constituted inequitable conduct or fraud.

[6] Mitsubishi's complaint includes allegations of the relevant product and geographic market, GE's market dominance, other alleged anti-competitive conduct, and antitrust injury. Those allegations are not relevant to the present issues and need not be summarized here, except to say that the other competitive acts all relate to threatened enforcement of the patents.

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. ("PRE")*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993). In *Walker Process*, the Court held that the maintenance and enforcement of a patent obtained by fraud may be the basis of an action under Section 2 of the Sherman Act. In *PRE*, the Court defined the sham litigation exception to the *Noerr-Pennington*[7] immunity enjoyed by a patent holder who brings suit to enforce the patent, adopting a two-part definition of sham litigation. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60, 113 S. Ct. at 1928.[8] Second, the baseless lawsuit must be an attempt to interfere directly with the business relationships of a competitor through the use of the government process, as opposed to the outcome of the process, as an anti-competitive weapon. *Id.* at 60-61, 113 S. Ct. at 1928. In explaining the objective element of sham litigation, the Court adopted from the tort of malicious prosecution or wrongful civil proceedings the notion of probable cause, saying that the "existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *PRE*, 508 U.S. at 62, 113 S. Ct. at 1929. Thus, "a proper probable cause determination irrefutably demonstrates that an antitrust plaintiff has not proved the objective prong of the sham exception and that the defendant is accordingly entitled to *Noerr* immunity." *Id.* at 63, 113 S. Ct. at 1930.

---

[7] *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135-37, 81 S. Ct. 523, 528-29, 5 L. Ed. 2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 664-66, 85 S. Ct. 1585, 1590-91, 14 L. Ed. 2d 626 (1965).

[8] The "objectively baseless" standard would also apply to Mitsubishi's Lanham Act and tortious interference claims. *Dominant Semiconductors SDN. BHD. v. OSRAM Gmbh*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). Accordingly, the Court need not address those claims separately from the sham litigation claims because all of them depend on whether GE knew that the patents were fraudulently obtained and therefore unenforceable.

On Mitsubishi's claims of sham litigation, GE argues that the preliminary success that it had before the ALJ establishes that the action was not sham litigation. GE also argues that Mitsubishi failed to file a motion to dismiss in the Dallas action, after saying that it would file such a motion, and so has conceded that the Dallas action is not a sham. Neither of those arguments has merit.

Although the decision of the ALJ may be evidence that the ITC/Corpus Christi action is not a sham, that decision by the ALJ does not conclusively establish that the action is not a sham. *See Boulware v. State of Nevada, Dept. of Human Resources*, 960 F.2d 793, 798 (9th Cir. 1992) (initial success in a trial court is a factor to be considered in determining whether litigation is sham but is not dispositive). *See also State of S. Dakota v. Kansas City Southern Indus., Inc.*, 880 F.2d 40, 54 n.30 (8th Cir. 1989) (recognizing that initial success may not categorically preclude a finding of sham). Here, Mitsubishi has alleged that GE withheld the 1984 DOE Report during the proceedings before the ALJ, even though it was within the scope of discovery requests, and failed to disclose it to the ALJ. Thus, Mitsubishi alleges that the ALJ's determination was procured by GE based on a false representation of fact (that there was no material prior art) that was not discovered until after the ALJ had issued a decision. "[F]alse claims of fact whose falsity is not immediately discovered or known could still be a sham." I Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 205c (3rd ed. 2006).

Even though Mitsubishi first said it would file a motion to dismiss the Dallas action but then did not file one, that fact does not constitute an admission by Mitsubishi that the Dallas action is not a sham. A complaint can meet all the pleading requirements of the Federal Rules of Civil Procedure and still, as a factual matter, be frivolous. Here, Mitsubishi's claim is not that the complaint in the Dallas action failed to state a claim upon which relief may be granted; Mitsubishi's claim here is that

7

GE knew that the patents that it seeks to enforce in Dallas were obtained by fraud, which is not an issue that could be resolved on a motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

GE also argues that the complaint fails to allege the circumstances of fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.[9] Although the complaint includes a great deal of factual information regarding the alleged fraud in obtaining and enforcing the patents, GE contends that the complaint still fails to meet the requirements of Rule 9(b) because the complaint does not identify by name the individuals at GE who were responsible for perpetrating the alleged fraud and because the complaint does not allege facts that would show deceptive intent. Mitsubishi relies upon *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), for the proposition that Rule 9(b) requires the complaint to identify by name the individuals at GE who were responsible for perpetrating the alleged fraud. In *Exergen*, the district court denied a motion to amend an answer so as to add inequitable conduct as an affirmative defense and counterclaim in a patent infringement action. The Federal Circuit affirmed, holding, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld information or of the falsity of the material representation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29. Based on that holding, the Federal Circuit held that the proposed pleading was deficient because it did not identify the individual or individuals who made

---

[9] The elements of a claim for *Walker Process* fraud are stated in *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 314 (N.D. Cal. 2007). Because GE's argument focuses on the particularity requirement of Rule 9(b), the elements of a *Walker Process* fraud claim need not be reiterated here.

8

the misrepresentation, it failed to identify the specifics of the material omissions alleged, and because the pleading did not specify the particular claim limitations or combination of claim limitations that were allegedly absent from the information of record. *Id.* at 1329. The Federal Circuit also found the proposed pleading deficient because it alleged deceptive intent "on information and belief" without stating any plausible reasons for that belief. *Id.* at 1330-31.

The Eighth Circuit has held, however, that Rule 9(b) does not require a complaint to include highly specific allegations with respect to facts that would be known to the defendants but not to the plaintiffs before the plaintiffs have had some opportunity to conduct discovery. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). In *Exergen*, the defendant had had an opportunity to conduct discovery before moving to amend the complaint to add the affirmative defense of inequitable conduct. *See Exergen*, 575 F.3d at 1317 (leave to amend was sought more than 13 months after the action was commenced). Here, Mitsubishi has not had an opportunity to conduct discovery. Thus, *Abels*, not *Exergen*, is more on point. The court explained in *Abels* that the purpose of Rule 9(b) is to enable the defendant to respond "at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.* at 920. Thus, a plaintiff must allege with specificity the time, place, and contents of the alleged false representations, as well as the identity of the person who made the false statement and what was obtained or released as a result. *Id*. Mitsubishi has done that here. Mitsubishi has identified with specificity each patent application that it contends was fraudulent and specifically what aspect of patent application allegedly was fraudulent. The time, place, and contents of the frauds, as well as what was obtained, are all alleged with specificity. GE has the information necessary to respond to these allegations. True, the complaint does not name the specific individuals within GE who were responsible for the

alleged fraud, but for the reasons stated in *Abels*, that is not required at this stage. The degree of specificity that GE demands cannot reasonably be required absent discovery.

GE's argument that the complaint should be dismissed for failing to allege facts to show deceptive intent fails because Rule 9(b) provides that intent may be alleged generally. *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d at 317 ("A party need not plead the intent element of its *Walker Process* claim with particularity.").

Mitsubishi's complaint satisfies the requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure as interpreted and applied in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007), *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008), and *Abels v. Farmers Commodities Corp.* Therefore, the motion to dismiss is denied.

## III.

Alternatively, GE asks this Court to stay the litigation pending resolution of the infringement actions. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). A court may stay an action to maximize the effective use of judicial resources and to minimize the possibility of conflicts between different courts. 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3rd ed. 2004). A motion for stay may be warranted when a similar action is pending in another court. *Id.*; *International Ass'n of Entrepreneurs of America v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995); *see also Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983).

Here, a stay is warranted. First, if GE prevails in any of the infringement actions, then Mitsubishi's claims in this action will be moot because GE will have the right to exclude Mitsubishi from the market. GE seeks not only monetary damages but also injunctive relief in both the Corpus Christi and Dallas actions. "From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 395, 126 S. Ct. 1837, 1841, 164 L. Ed. 2d 641 (2006) (Roberts, C.J., concurring). *See also Dentsply Int'l, Inc. v. New Technology Co.*, 1996 WL 756766, at *3 (D. Del. Dec. 19, 1996) (a patent gives its owner the right to exclude others from the marketplace). Secondly, a final victory by GE in either of the infringement actions would establish that the action was not sham litigation because "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *PRE*, 508 U.S. at 60 n.5, 113 S. Ct. at 1928 n.5. *See also* Areeda & Hovenkamp, *supra*, ¶ 205c ("As a general proposition, a successful judicial action cannot be a 'sham' regardless of the plaintiff's motive. Success on the contested merits of a claim demonstrates that the cause of action was valid and tends to preclude the belief that it was initiated without probable cause."); *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 500 (E.D. Pa. 2005) (Antitrust claims based on sham litigation "do not accrue for statute of limitations purposes until the underlying litigation has terminated. Similarly, an antitrust claim based on baseless litigation requires proof that the litigation was unsuccessful, which can only be determined upon the termination of the initial action.") (internal citations omitted); *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 1615307, at *7 n.14 (E.D. Pa. July 16, 2004) ("If [the antitrust defendant] were to prevail on the issue of patent validity, then its patent infringement lawsuit could not be 'objectively baseless' because [the antitrust defendant] could have expected that a court would find its patent

valid."); *Dentsply Int'l*, at *2 ("[A]lthough defendants contend plaintiffs must prevail in a first trial on both the patent and trade secret counts of their claim for an accusation of a "sham" to be dismissed, they have not supported this contention with law.  In fact, courts have indicated that litigation will not be considered a 'sham' so long as at least one claim in the lawsuit has objective merit.  Therefore, if plaintiffs prevail on one of their counts, the sham aspect of the antitrust counterclaim must fail.") (internal citations omitted).  Even if Mitsubishi prevails in the infringement actions, if they are close, hard-fought cases, that fact could result in a finding, as a matter of law, that those actions were not objectively baseless, which would resolve this action.  *See AstraZeneca AB v. Mylan Laboratories Inc.*, 2010 WL 2079722, at *4 (S.D.N.Y. May 19, 2010) (dismissing a sham litigation claim because the infringement action, though won by the antitrust plaintiff, was hard fought and close and therefore not objectively baseless).

Because the decisions in the ITC/Corpus Christi and Dallas actions could render this case moot or narrow the issues considerably, this Court's discretion is best exercised in granting a stay. Otherwise, the parties will have no choice but to go forward with what undoubtedly will be enormously expensive discovery,[10] perhaps to find that the expense has been wasted if GE prevails in the infringement actions or if the infringement actions are close, hard fought cases in which Mitsubishi prevails.  A number of district courts have stayed antitrust claims asserting that patent litigation was a sham.  *See, e.g., Masimo Corp. v. Philips Electronics N. Am. Corp.*, 2010 WL 925864 (D. Del. March 11, 2010); *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 684 F. Supp. 2d 1231 (D. Or. 2010); *Abraxis Bioscience, Inc. v. Navinta LLC*, 2008 WL 2967034 (D. N.J.

---

[10] *See Twombly*, 550 U.S. at 558-59, 127 S. Ct. at 1967 (discussing the high cost of discovery in antitrust cases).

12

July 31, 2008); *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245[11] (D.D.C. 2007); *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 1615307 (E.D. Pa. July 16, 2004); *ASM America, Inc. v. Genus, Inc.*, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002).

Mitsubishi resists the conclusion that this action should be stayed, arguing that the issues in this action and the issues in the infringement actions are sufficiently dissimilar that it may prevail here even if GE prevails in the infringement actions. Mitsubishi also argues that it will be prejudiced by a stay in this action because GE's claims of patent infringement have scared and continue to scare customers into thinking that Mitsubishi's turbines are subject to protracted litigation and legal uncertainty. Mitsubishi's argument, at least in part, is based on the fact that Mitsubishi decided not to assert the affirmative defense of inequitable conduct in the Dallas action. In other words, Mitsubishi has reserved its claim that the '055 and '705 patents were fraudulently obtained for adjudication in this action, rather than in the Dallas action where GE is seeking to enforce those two patents, so that it is logically possible that the court in the Dallas action could find that the patents were enforceable and that Mitsubishi had infringed them, while this Court could, without contradicting the court in the Dallas action, find that the patents are invalid and that the Dallas action was sham litigation because GE knew that the patents at issue in the Dallas action were fraudulently obtained. The distinction is between "technical fraud" that might result from an honest mistake and fraud involving the willful misrepresentation of facts to the Patent and Trademark Office. *See Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 594 (7th Cir. 1971) (*citing Walker Process*, 382 U.S. at 177, 86 S. Ct. at 350). Absent fraudulent intent, the invalidity of one

---

[11] *WAKA* involved an antitrust counterclaim alleging that a copyright infringement claim was a sham.

claim does not render the remaining claims invalid. 35 U.S.C. § 288; *Kearney & Trecker*, 452 F.2d at 596. Deceptive intent, however, renders the entire patent invalid. *Id*. What Mitsubishi proposes to do, then, is to litigate "technical fraud," which would only invalidate certain claims, in the Dallas action, while litigating deceptive intent, which would invalidate an entire patent, here.

While Mitsubishi's strategy is innovative, it would put this action on a road down which this Court believes it would be unwise to go. As already noted, according to the Supreme Court, a winning lawsuit is by definition not a sham. This Court may have the discretion in effect to evade that holding by allowing Mitsubishi to argue here that the Dallas action is a sham for reasons that Mitsubishi could assert in the Dallas action but chooses not to do so. Allowing that course of action, however, would result in two different actions in two different courts simultaneously examining the validity of the same patents—which would be wasteful of judicial resources. For example, Mitsubishi's counterclaim in the Dallas action alleges that the '055 patent is invalid because the 1984 DOE Report is material prior art. Here, Mitsubishi's fraud claim alleges that GE obtained the '055 patent fraudulently by failing to disclose the 1984 DOE Report, which was material prior art. While Mitsubishi has not alleged in the Dallas action that GE committed fraud in obtaining the '055 patent, its contention there that the 1984 DOE Report is material prior art is at the heart of its claim here that GE obtained the '055 patent by fraud. In the Corpus Christi action, which is stayed at Mitsubishi's request, Mitsubishi has asserted the affirmative defense of inequitable conduct based at least in part on conduct that forms part of the basis for the fraud allegations here. Both of the infringement actions, therefore, will adjudicate at least some of those issues presented here. The better exercise of this Court's discretion is to stay this action and to allow the infringement actions

to proceed. Then, if GE succeeds in the ITC/Corpus Christi and Dallas actions, absent fraud by GE, this case will be over.

Just as it would be improper if GE withheld evidence in its possession material to the merits of the issues in the ITC action (as Mitsubishi alleges happened), so also it would be improper for Mitsubishi to withhold evidence material to the resolution of the Dallas action, even if the reason for withholding that evidence is to enable Mitsubishi to present it here. The goal of the court in every case is to reach a determination that truthfully finds all of the available, relevant facts and accurately applies the law to those facts. Our judicial system pursues that goal through the adversary process based on the assumption that in the adversary process each party will have an incentive to present all of the facts and arguments that may support a determination in that party's favor. Mitsubishi proposes a course of action contrary to the assumption that underlies the adversary process. Mitsubishi would forego an available defense in the Dallas action so as to litigate the basis for that defense here, ostensibly because an action here typically can proceed to trial more quickly than an action in Dallas. To go forward here based on Mitsubishi's argument would put the district court in the Dallas action in the position of adjudicating a claim where one party has an incentive not to present all of its relevant evidence and available arguments, which then would undermine the integrity of the process and undercut the reliability of the outcome there. This Court will not facilitate that prospect. If GE succeeds in the infringement actions because Mitsubishi decides not to assert a defense available to it, not to present evidence in its possession, or not to make arguments available to it, that decision by Mitsubishi will not affect this Court's determination to follow the Supreme Court in holding that a winning lawsuit by definition is not a sham. It is rare for this Court

to say in advance how it will rule on an issue that is not ripe for decision, but in this instance it is necessary to do so in order fully to explain the reason for granting a stay.

If GE were to succeed in the ITC/Corpus Christi and Dallas actions by defrauding the Court (as Mitsubishi alleges happened in the proceedings before the ALJ), Rules 60(b)(2) and (3) of the Federal Rules of Civil Procedure could provide relief in the defrauded court, after which Mitsubishi might succeed in arguing that the prior action was a sham despite GE's initial success (*see* page 7 *supra*); but a final judgment in favor of GE in those actions will defeat a claim in this Court that those actions were a sham.[12]

Mitsubishi will not be prejudiced by a stay in this action. Mitsubishi's argument tends to show that it may suffer prejudice as a result of the time it may take for the infringement actions to be resolved, but Mitsubishi, not GE, filed the motion for a stay of the Corpus Christi action pending a final decision in the appeal of the ITC action. Moreover, Mitsubishi could have asserted the same claims of sham litigation and fraud in the infringement actions, but it chose not to do so. *See Monsanto Co. v. E.I. du Pont De Nemours and Co.*, 2009 WL 3012584, at *2 (E.D. Mo. Sept. 16, 2009) (holding that there was little indication that a stay would be substantially prejudicial to defendants, where defendants could have asserted many of the claims years ago but instead chose to wait). As explained above, absent some development that is presently unforeseen, the merits of Mitsubishi's sham litigation claims should not be determined until the infringement actions are concluded. If all of the infringement actions are decided in Mitsubishi's favor, it will be able to go

---

[12] This is not to say that the existence of an antitrust violation depends in every instance on an earlier determination that the antitrust defendant lost on the merits in the infringement action. *See* II Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 320 (3rd ed. 2006). The principle is that a successful action cannot be a sham, which means in this instance that the better exercise of judicial discretion is to stay this action while the patent actions are being litigated.

forward in the marketplace whether this action is stayed or not; and if any one of the infringement actions is decided in GE's favor, Mitsubishi will be unable to go forward in the marketplace whether this action is stayed or not. Thus, Mitsubishi may be prejudiced by delay in the infringement actions, but it will not be prejudiced by a stay in this case pending the resolution of the infringement actions. If the infringement actions are frivolous, as Mitsubishi contends, Rule 11 and Rule 56 are available to expedite their conclusion.

## CONCLUSION

No one hates delay more than the undersigned judge. Nevertheless, for the reasons stated, this action should be stayed while the infringement actions are being litigated. Mitsubishi's motion to dismiss or, in the alternative, to stay is GRANTED IN PART and DENIED IN PART. Document #14. The motion to dismiss is denied; the motion to stay is granted.

No discovery will be conducted in this action unless and until this stay is lifted. The time within which GE must file a responsive pleading pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure will not begin to run until the stay is lifted. GE's responsive pleading will be due within fourteen days after the entry of an order lifting the stay.

This order should not be construed as an irrevocable stay regardless of what happens in the infringement actions or how long it may take for them to be resolved. If GE engages in conduct designed deliberately to delay one or both of the infringement actions, or if it becomes apparent that one or both of the infringement actions cannot be litigated to a conclusion within a reasonable time, this Court may lift the stay and permit discovery here to commence. Likewise, the Court may lift the stay and permit discovery to commence even if new infringement actions are filed hereafter. In

other words, this stay will not continue indefinitely while numerous infringement actions are litigated.

The parties are ordered to file status reports on the first business day of each quarter of the year, beginning October 1, 2010, until this stay is lifted.

IT IS SO ORDERED this 23rd day of August, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE